IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE: FIRST & FEDERAL LTD.,

                                          Debtor.


FIRST & FEDERAL LTD.,

                                          Appellant.

             v.                                         Civil Action Number 3:05CV244-JRS

CHRISTOPHER MONROE
and
DAVID MONROE, JR., infants, by and through
CYNTHIA MONROE, their Mother and Next
Friend
and
CYNTHIA MONROE, individually,

                                          Appellees.


## MEMORANDUM OPINION

THIS MATTER comes before the Court on Appellant, First & Federal Ltd.'s ("F&F")

Appeal of the Bankruptcy Court's January 31, 2005, Order, pursuant to 11 U.S.C. § 362(d) and

Federal Rules of Bankruptcy Procedure 8001 *et seq.*. F&F seeks to reverse the Bankruptcy Court's

decision granting Appellees, Christopher Monroe, Davis Monroe, Jr., by and through Cynthia

Monroe, their mother and next friend, and Cynthia Monroe (collectively "the Monroes"), modified

relief from the automatic stay provisions of 11 U.S.C. § 362. For the reasons outlined below, the

decision of the Bankruptcy Court is AFFIRMED.

I.

F&F initially filed for Chapter 7 bankruptcy on July 14, 2004. <u>See</u> <u>In re: First & Federal Ltd.</u>, Case No. 04-36715-DOT. The Monroes and the Office of the U.S. Trustee were the only listed creditors. This bankruptcy was dismissed by the Bankruptcy Court on August 3, 2004, because F&F failed to timely file its list, schedules, and statements. On September 29, 2004, F&F filed a second Chapter 7 bankruptcy petition. In the schedules presented to the Bankruptcy Court, F&F claims that it has no assets and listed the Monroes, the Office of the U.S. Trustee (the "Trustee"), and one of the state court defendants as creditors.[1] The Trustee is presently investigating F&F's corporate information to determine if there are potential assets available for distribution to creditors.

The Monroes have two lawsuits pending, one for each infant son, against F&F in the Richmond Circuit Court  (hereinafter "the state court actions"). In those actions, the Monroes  seek recovery for lead poisoning injuries allegedly obtained while the Monroes were residing at property owned by F&F. The first case, styled <u>Christopher Monroe, an Infant, who sues through Cynthia</u> <u>Monroe, his Mother and Next Friend, and Cynthia Monroe, Individually v. James R. Reynolds Sr.,</u> <u>et al.</u>, Law No. LP 2522-4, was set for trial on July 26, 2004. The second case, styled <u>David Monroe,</u> <u>Jr., an Infant, who sues through Cynthia Monroe, his Mother and Next Friend, and Cynthia Monroe,</u> <u>Individually v. James Reynolds Sr., et al.</u>, Law No. LR 1373-3, has never been set for trial.[2] The state court actions were stayed due to the filing of F&F's first and second bankruptcy petitions.

On November 17, 2004, the Monroes filed a Motion for Relief From the Automatic Stay. On

---

[1]F&F contests the Monroes' assertion that the Monroes, the Trustee, and a defendant in one of the state court actions are the only creditors listed.

[2]The Monroes have settled their cases against James Reynolds.

January 31, 2005, the Bankruptcy Court granted the Monroes modified relief from the automatic stay so that they could "proceed with their state court actions for purposes of obtaining a judgment and liquidating any potential claim against [F&F]." Jan. 31, 2005, Order at 2. However, the Order also stated that "[t]he automatic stay remains in effect for the purposes of execution, attachment, and any other remedy associated with enforcing any judgment obtained in state court until such time as the Trustee determines that the Debtor does not have any assets available for the benefit of creditors and files a no asset report with the Court." Id. In the event that the Trustee files a no asset report, the Order states that the Monroes "shall be granted relief from the provision of the automatic stay so that they may proceed with execution and other pre-judgment and/or post-judgment remedied." Id. F&F has appealed the Bankruptcy Court's January 31, 2005, order.

## II.

"When a district court reviews a bankruptcy court's decision [] to lift an automatic stay, the district court acts as an appellate court, reviewing the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*." The Fairville Co., L.P. v. Ramkaran (In re Ramkaran), 315 B.R. 361, 363-364 (D.Md. 2004) (citations omitted); Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 399 (4th Cir. 1992). A district court may overturn a bankruptcy court's discretionary decision to lift an automatic stay when an abuse of discretion has occurred. In re Ramkaran, 315 B.R. at 364. "An abuse of discretion occurs only when the bankruptcy court relies upon clearly erroneous findings of fact or uses an erroneous legal standard. Id. A bankruptcy court's findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." McGahren v. First Citizen Bank & Trust Co. (In re Weiss), 111 F.3d 1159, 1166 (4th Cir. 1997).

III.

Pursuant to 11 U.S.C. § 362, most judicial actions against a debtor commenced before the filing of a bankruptcy petition are automatically stayed. <u>Robbins v. Robbins</u>, 964 F.2d 342, 345 (4th Cir. 1989). A bankruptcy court has discretion to lift the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." <u>See</u> 11 U.S.C. § 362(d). Since "cause" is not defined in the statute, "the bankruptcy court must balance the potential hardship that will be incurred by the party seeking relief if the automatic stay is not lifted, against the potential prejudice to the debtor and the debtor's estate." <u>I.R.S. v. Robinson</u>, 169 B.R. 356, 359 (E.D. Va. 1994) (citing <u>In re Peterson</u>, 116 B.R. 247, 249 (D. Colo. 1990)).

When determining whether to lift an automatic stay, bankruptcy courts will consider: "(1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court." <u>Robbins</u>, 964 F.2d at 345 (citations omitted).[3] Bad faith in filing a bankruptcy petition can

---

[3]The Monroes assert that the test articulated in <u>Robbins</u> applies to corporations reorganizing in a Chapter 11 case, but is not really applicable in a Chapter 7 case involving a corporation undergoing liquidation without discharging its debts. The factors in <u>Robbins</u> are applicable to this case, but are considered in light of the fact that this case involves liquidation, not reorganization concerns. <u>See</u> 1 Norton Bank. L. & Prac.2d § 3.8 ("Even though there is nothing in § 362(d) to suggest that the rules for lifting the stay will be applied differently in cases under different chapters, Bankruptcy Courts are sensitive to what can be significant differences between cases filed under the reorganization Chapters (9,11,12 and 13) and cases filed under Chapter 7 (liquidation) so that it may appear that standards for continuation as well as for lifting the stay are applied differently.").

also form the basis for lifting an automatic stay. In re Ramkaran, 315 B.R. at 365.

In the case at bar, F&F argues that the Monroes have not established why they should be granted relief from the automatic stay provision. Although the Bankruptcy Court did not articulate the exact basis of its decision to grant the Monroes' modified relief from the automatic stay provision, the Bankruptcy Court's decision is clearly supported by the record.

A. Bad Faith as "Cause" to Lift Stay

F&F asserts that the stay should not be lifted because is was not established that F&F's bankruptcy petition was filed in bad faith. F&F states that during oral argument the Monroes made a bad faith filing argument before the Bankruptcy Court, but the Trustee did not corroborate this claim. Specifically, F&F states that the Trustee did not: (1) confirm the Monroes' assertion that schedules and statements were not filed; (2) mention any found assets; (3) discover any fraudulent transfers; or (4) mention Bob Davis.[4] In fact, F&F submits that the Trustee stated that he would not seek to have the bankruptcy petition dismissed.

F&F states that "findings as to good faith or the lack thereof is a factual determination that cannot be set aside unless it is clearly erroneous." In re Northeast Corp., 519 F.2d 1360, 1363 (4th Cir. 1975). F&F further notes that the Bankruptcy Court did not make a finding or reach a conclusion on the issue of bad faith filing; the Bankruptcy Court only made a finding that the state court actions had been halted and that F&F filed two bankruptcy petitions in a short period of time. Accordingly,

---

[4]According to the December 8, 2004, bankruptcy hearing transcript, the Monroes allege that Mr. Davis is the principal and sole owner of First & Federal Ltd. and Camrod Ltd. of Richmond, one of the co-defendants in that state court actions. According to the Monroes, Mr. Davis is a convicted felon and "the most notorious slum landlord in the history of the world." Dec. 8, 2004, Tr. at 4. F&F asserts that Mr. Davis is not one of the principals of these corporations.

F&F argues that the Bankruptcy Court's decision granting the Monroes relief from the automatic stay was not supported by "cause."

There is sufficient evidence upon which the Bankruptcy Court could conclude that "cause" existed in the form of bad faith. The record indicates that F&F filed its first petition twelve days prior to the trial date of one of the state court actions. After filing this petition, F&F failed to file the necessary lists, schedules, and statements to proceed with its bankruptcy case. The Trustee has also indicated that the Monroes are the only scheduled creditors in this case. See Jan. 12, 2005, Tr. at 7:9-11. Given the timing of F&F's first bankruptcy petition, the fact that it was dismissed for failure to submit timely lists, schedules, and statements, and the fact that the Monroes are the only scheduled creditors, the Bankruptcy Court could easily have concluded that the bankruptcy petition was filed primarily to prevent the Monroes from proceeding in the state court actions.

A finding of bad faith is not necessarily all that is needed under the balancing test to determine whether "cause" exists. In re Ramkaran, 315 B.R. at 366 ("Ultimately, bad faith is one component of, but not necessarily dispositive of, the balancing test.").  However, there are no facts present in this case which would tilt the balance of the hardships in F&F's favor. The fact that the Trustee did not find any fraudulent transfers or mention any found assets does not create prejudice to F&F or its estate since corporate debtors in a liquidation proceeding under Chapter 7 do not receive a discharge of their debts. See 11 U.S.C. §727 ("The court shall grant a debtor a discharge unless– (1) the debtor is not an individual."); Mann v. CCR Fin. Planning, LTD., 199 B.R. 347, 349 (Bankr. E.D. Va. 1996) ("[C]orporate debtors do not receive a discharge under § 727.").

Moreover, the Trustee has indicated that it is necessary for the proper administration of this case that the Monroes' claims be liquidated so that the Bankruptcy Court, Trustee, and all parties

know the amount of the claim in the event that assets are determined to exist. See Jan. 12, 2005, Tr. at 7:3-15. Accordingly, the evidence of bad faith and the lack of prejudice to F&F supports the Bankruptcy Court's decision to grant modified relief from the stay.

B. In re Robbins Factors as "Cause" to Lift Stay

Even if the Bankruptcy Court did not find that "cause" existed based on bad faith, the evidence in the record supports the Bankruptcy Court's decision based on the considerations articulated in Robbins.

1. Arising Under State Law

F&F contends that while the underlying claims (lead poisoning) arise under state law, issues of bankruptcy law are involved. In the state court actions, the Monroes have argued that one person (Bob Davis) was behind all related corporate transfers, foreclosures, and re-purchases leading to their fraud claims and that they ultimately seek to pursue post-judgment remedies such as voiding related transfers and trying to bring back assets into the bankruptcy estate. F&F asserts that these allegations of fraud and improper use have invoked the Bankruptcy Court's exclusive jurisdiction to determine the dischargeability of debts under 11 U.S.C. § 523(c). F&F states that the case should go to the Bankruptcy Court, not the state court because any state remedy awarded to the Monroes would be to the detriment of the other bankruptcy creditors. Furthermore, F&F submits that the Bankruptcy Court's finding that there are pending state suits is too narrow of a finding to support a conclusion that only state law issues are involved.

The underlying state court actions only involve state law personal injury issues and not bankruptcy law. Both parties have stated that the basis of the Monroes' state court actions arise from personal injuries as a result of lead poisoning and related fraud claims. F&F's assertion that the

7

Monroes will attempt to pursue post-judgment relief in the Bankruptcy Court does not change the nature of the Monroes' state law claims. Moreover, the state court actions do not invoke the Bankruptcy Court's exclusive jurisdiction to determine the dischargeability of debts under 11 U.S.C. § 523(c) because corporate debtors do not receive a discharge in Chapter 7 bankruptcies. Accordingly, this factor weighs in favor of the Monroes.

### 2. Judicial Economy/Interference with Bankruptcy Litigation

F&F argues that judicial economy would not be promoted by granting the Monroes relief from the automatic stay. F&F contends that if the Trustee finds that F&F has no assets, the state court actions would become moot and substantial time and resources will have been wasted. Moreover, F&F submits that lifting the stay is premature because the Trustee has not yet decided whether F&F has any assets. F&F further insists that exigent circumstances do not exist in this case since urgency has not been alleged, only one of the state court actions has ever been set for trial, and because the Monroes have settled with one defendant for $250,000.

F&F further submits that litigation in the state court will interfere with its bankruptcy case. F&F states that the Monroes have already indicated that they intend to pursue a post-judgment fraudulent transfer claim. F&F contends that these types of claims are the exclusive jurisdiction of the bankruptcy and would affect the Trustee and other creditors. Furthermore, F&F argues that since the Bankruptcy Court did not consider this factor in reaching its decision, the decision should be overturned for abuse of discretion.

There is no indication that the bankruptcy proceeding will be harmed or interfered with by permitting the Monroes to proceed in the state court actions. In fact, the Trustee has indicated that liquidation of these claims is necessary to the proper administration of the estate. Judicial economy

8

will be served because the modified stay will not lead to duplicative litigation because a finding of no assets will not make the case moot.  See January 31, 2005, Order at 2 (If a no asset report is filed, the Monroes will be given "relief from... the automatic stay so that they may proceed with execution and other pre-judgment and/or post-judgment remedies."). The record clearly shows that F&F and its estate are not prejudiced by this factor.

F&F's argument that the Bankruptcy Court's decision was an abuse of discretion because it did not make specific finds regarding each factor is also without merit. "[B]ankruptcy courts have wide discretion in weighing the factors and determining what constitutes cause to annul the stay." Shaw v. Ehrlich, 294 B.R. 260, 272 (W.D. Va. 2003) (citing In re Robbins, 964 F.2d at 345); see also In re Wilson, 168 B.R. 90, 92 (Bkrptcy. M.D.N.C. 1994) (applying factors to case and determining that judicial economy and the well being of the debtor's Chapter 11 petition were the controlling considerations). Accordingly, the Bankruptcy Court has the discretion to decide which factors will be the controlling considerations in the case at bar. Given the fact that F&F cannot receive a discharge because it is a corporate debtor filing for bankruptcy under Chapter 7, some of the factors articulated in Robbins may not deserve in depth consideration.

*3. Protection of the Estate*

F&F argues that the modified stay should not be granted because the bankruptcy estate cannot be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.  In support of this contention, F&F argues that the litigation expenses it will incur prior to the Trustee's determination of whether additional assets exist will needlessly cause the depletion of existing assets. F&F asserts that a state court judgment will not benefit the Monroes because it will not affect the priority of their claim, but only acts to establish the amount of their

9

claim. Again, F&F reiterates that if it is found that no additional assets exist, the state court litigation will prove to be futile. F&F contends that the <u>Robbins</u> balancing test tilts in its favor because the Monroes desire to rush to trial is outweighed by its desire to avoid the cost of needless litigation.

F&F's argument that the bankruptcy estate will be harmed if they are permitted to proceed with the state court actions is incorrect. If F&F truly does not have any assets, then proceeding with the state court litigation will not deplete any assets to the detriment of other creditors. Furthermore, the litigation in the state court actions is not "futile" nor does it create needless litigation costs because a finding of no assets by the Trustee will not discharge the debts of F&F. <u>See</u> 11 U.S.C. §727. Given the Bankruptcy Court's ruling that all remedies associated with enforcing any judgment are stayed unless and until the Trustee files a no asset report, the bankruptcy estate is properly protected.

Accordingly, the Bankruptcy Court's decision is supported by "cause" based on the considerations articulated in <u>Robbins</u>.

V.

There is no indication that the Bankruptcy Court relied on clearly erroneous facts or an erroneous legal standard. The Bankruptcy Court's finding of "cause" is clearly supported by the record based on both a bad faith filing rationale and under the <u>Robbins</u> factors. Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion in granting a modified stay. The January 31, 2005, Order is AFFIRMED.

  /s/ James R. Spencer
UNITED STATES DISTRICT JUDGE


    July 21, 2005
DATE

10